**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0605-21

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

WAYNE E. BROUGHTON,
a/k/a WAYNE BROUGHTON,
and SHARAY R. PALMER,
a/k/a SHARAY PALMER,

    Defendants-Respondents.

_____

Submitted February 1, 2022 – Decided March 17, 2022

Before Judges Currier and DeAlmeida.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 21-08-0720.

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for appellant (Shari-Ann Sasu and Kaila L. Diodati, Assistant Prosecutors, of counsel and on the brief).

Joseph E. Krakora, Public Defender, attorney for respondent Wayne E. Broughton (Christine M. Long,

Assistant Deputy Public Defender, of counsel and on the brief).

Weinstock Levin, attorneys for respondent Sharay R. Palmer (Ed Weinstock, on the brief).

PER CURIAM

On leave granted, the State appeals from the September 21, 2021 order granting defendants' motion to suppress certain guns, ammunition, and an empty gun box found during a search of the residences of defendant Sharay Palmer and his girlfriend, as well as the house where defendant Wayne Broughton was arrested. We affirm.

Defendants were arrested and charged with murder and aggravated assault after shooting at several men, one of whom later died of his injuries. Prior to the shooting, Palmer had been at a party where he argued with the decedent. Police identified Broughton from video surveillance as the driver of the car from which gunshots were fired.

During the investigation, search warrants were issued for Palmer's and his girlfriend's residences, as well as Marquita Ball's home where Broughton was arrested.

During the execution of the search warrant at Palmer's residence, law enforcement recovered an empty Glock handgun box, several cell phones, and a

bag containing "green vegetation." Court documents with Palmer's and his attorney's names on them were found in the area near the gun box.

During the search of Palmer's girlfriend's residence, law enforcement seized: a "High Points Arms model 4595 .45 caliber semi-automatic rifle"; a "Smith and Wesson, model SD9VE semi-automatic 9mm handgun with holster, . . . along with two . . . loaded magazines"; four 9mm rounds of ammunition and one .45 caliber round of ammunition; four boxes of 9mm ammunition; one box of .45 caliber ammunition; as well as a cell phone and two clear plastic bags containing "green vegetation."

From Ball's residence, police retrieved a .22 caliber long rifle revolver and an envelope containing .22 caliber hollow point bullets, along with electronic devices, currency, distribution paraphernalia, and marijuana.

The investigation of the 9mm shell casings found in the roadway revealed they were fired from two separate firearms. The guns used in the shooting were never recovered.

The State Police ballistics unit tested all of the guns and ammunition seized in the searches and compared them to the ten bullet and cartridge cases recovered from the crime scenes. The ammunition seized from Palmer's girlfriend's residence did not match the casings found at the scenes. The police

3

also concluded the bullets recovered at the crime scenes were not discharged from the firearms seized from Palmer's girlfriend's house. In addition, they determined the firearm recovered from Ball's residence was "likely not a match."

Defendants moved to suppress evidence of the weapons, ammunition, and empty handgun box. They asserted the guns and ammunition were inadmissible because the State had concluded they were not the murder weapon or ammunition used in the shooting. In addition, the guns and ammunition were not relevant because the guns were ruled out as the murder weapon and defendants were not charged with weapons offenses. Defendants contended that even if evidence of the guns and ammunition was relevant, the admission of those items would unduly prejudice them under N.J.R.E. 403 because the State had ruled out the recovered weapons and ammunition as the murder weapon. The introduction of those items would allow the jury to make an adverse inference that because Palmer's girlfriend possessed guns, defendants must have shot and killed the victim.

In response, the State asserted it did not intend to seek admission of the actual items. Instead it wanted to tell the jury about the discovery of the guns and ammunition to "show the completeness of the investigation"—namely that the State executed the search warrants and found several guns which were not

4

the murder weapon. The State also wanted to use the evidence "to tie . . . Palmer to [the] possibility that he had access to the murder weapon."

In addressing the empty gun box, the State argued it was admissible because "[i]t goes to the point that [Palmer] was in possession of a weapon, at some point, that could have been the 9 x 19 gun which matches the casings found at the [crime] scene[s]." The State also noted that the empty gun box had "the same caliber markings that the ballistic report says, . . . 9 x 19 bullets, a very specific bullet." Thus, the State argued, the jury is entitled to draw the conclusion that Palmer possessed a gun that was kept in the empty gun box, and was the same type as the murder weapon.

Palmer asserted it was "pure speculation" as to who the empty gun box belonged to and whether he possessed a weapon that belonged in the box. He further contended that admitting the gun box was "highly prejudicial" because it allowed the jury to draw the inference that "the gun that should fit in that gun box is missing, and therefore, could have been the murder weapon."

In granting defendants' motion to suppress, the court found there was "no reason to introduce [the] evidence, other than to allow the jury to develop an inference." The court also found the empty gun box was not relevant and the "prejudicial value outweigh[ed] the probative value."

On September 21, 2021, the court issued an order granting "[d]efendants' motion to exclude certain guns and ammunition found pursuant to a search warrant" and to "exclude at trial the presentation by the State of an empty gun box."

The State raises the following issue for our consideration:

> THE LOWER COURT ERRED IN SUPPRESSING THE EVIDENCE IN THIS CASE, AS THE EVIDENCE DOES NOT CONSTITUTE OTHER CRIMES, IS NOT SUBJECT TO A N.J.R.E. 404B ANALYSIS, AND IS NOT UNDULY PREJUDICIAL UNDER N.J.R.E. 403

We review a trial court's evidentiary ruling for an abuse of discretion. State v. Garcia, 245 N.J. 412, 430 (2021) (citing State v. Nantambu, 221 N.J. 390, 402 (2015)). We "will not substitute our judgment unless the evidentiary ruling is 'so wide of the mark' that it constitutes 'a clear error in judgment.'" Garcia, 245 N.J. at 430 (quoting State v. Medina, 242 N.J. 397, 412 (2020)). A trial court abuses its discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. R.Y., 242 N.J. 48, 65 (2020) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

The State renews its arguments on appeal, and contends the court erred in finding the evidence was not relevant. As to the guns and ammunition, the State

6

asserts they are relevant to demonstrate defendants' access to weapons. We disagree.

For evidence to be admissible, it must be relevant. Relevant evidence must have a "tendency in reason to prove or disprove any fact of consequence to the determination of the action." Garcia, 245 N.J. at 431 (citing N.J.R.E. 401). Evidence is probative under Rule 401 "when it has a tendency 'to establish the proposition that it is offered to prove.'" State v. Burr, 195 N.J. 119, 127 (2008) (quoting State v. Allison, 208 N.J. Super. 9, 17 (App. Div. 1985)).

A court may admit evidence it finds relevant "unless exclusion is warranted under a specific evidence rule." State v. Trinidad, 241 N.J. 425, 449 (2020) (quoting Burr, 195 N.J. at 127). "One such rule . . . is N.J.R.E. 403." Trinidad, 241 N.J. at 449 (quoting State v. Cole, 229 N.J. 430, 448 (2017)).

Under Rule 403, "relevant evidence may be excluded if its probative value is substantially outweighed by risk of: (a) [u]ndue prejudice, confusion of [the] issues, or misleading the jury; or (b) [u]ndue delay, waste of time, or needless presentation of cumulative evidence."

In finding "undue prejudice" under Rule 403, a court must determine

> whether the admission of certain evidence would be
> unduly prejudicial . . . [so that] the evidence's probative
> value "is so significantly outweighed by [its] inherently
> inflammatory potential as to have a probable capacity

> to divert the minds of the jurors from a reasonable and fair evaluation of the basic issue of guilt or innocence."
>
> [Trinidad, 241 N.J. at 449 (alteration in original) (quoting State v. Thompson, 59 N.J. 396, 421 (1971)).]

Here, the trial court did not err in suppressing the weapons and ammunition because they are not relevant to defendants' charges. The weapons were tested and found not to be the murder weapon. The ammunition also was not a match to the casings and bullets found at the scenes. Therefore, the items do not have a "tendency in reason to prove or disprove any fact of consequence to the determination of the action." Garcia, 245 N.J. at 431 (quoting R. 401).

Moreover, even if the weapons and ammunition were relevant, any probative value of the evidence is significantly outweighed by its "inherently inflammatory potential as to have a probable capacity to divert the minds of jurors from a reasonable and fair evaluation of the basic issue of guilt or innocence." Trinidad, 241 N.J. at 449 (quoting Thompson, 59 N.J. at 421). The introduction of the weapons and ammunition would distract the minds of the jury and may lead them to conclude that because Palmer's girlfriend possessed a gun, defendants must have possessed the murder weapon—an inference unsupported by the evidence. Therefore, the trial court did not abuse its discretion in suppressing evidence of the weapons and ammunition.

The State attempts to sidestep Rules 401 and 403 by asserting it is entitled to apprise the jury of the discovery of the guns and ammunition so the jury will know the State thoroughly investigated the homicide. Like the trial court, we reject that argument. There is no backdoor through which a party can bypass the rules of evidence and introduce irrelevant or unduly prejudicial evidence.

In addressing the admission of the empty gun box, the State argues the evidence is relevant because it proves Palmer had access to weapons. The trial court found the gun box was not relevant under Rule 401, stating that "in the absence of the murder weapon," an empty gun box cannot serve as evidence of a "substitute" murder weapon. The court also found the prejudicial value of the gun box outweighed any probative value under a Rule 403 balancing analysis. We discern no reason to disturb that determination. The presence of an empty gun box in Palmer's residence does not have "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." See Garcia, 245 N.J. at 431. Palmer was not charged with possession of a weapon or any weapons-related charges.

Even if the empty gun box was probative as to some fact of consequence, the jury would be free to make the impermissible, unduly prejudicial inference

9

that the empty gun box must have previously contained the murder weapon. The State has not presented any evidence to support this inference.

The State also contends the empty gun box is "intrinsic evidence." We again disagree. "[I]ntrinsic evidence" is a very narrow category that applies when: (1) the evidence "'directly proves' the charged offense"; or (2) the evidence is of an uncharged act, which was "performed contemporaneously with the charged crime" and "facilitate[s] the commission of the charged crime." State v. Rose, 206 N.J. 141, 180 (2011) (quoting United States v. Green, 617 F.3d 233, 249 (3d Cir. 2010)). The empty gun box does not directly prove any of the charged offenses. Nor is the possession of an empty gun box an uncharged act that facilitates the commission of any of the charged offenses—it is merely an empty container.

We discern no abuse of discretion in the court's order suppressing the guns, ammunition, and empty gun box. Any arguments not addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0605-21